FILED

2007 Mar-28  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JEANETTE BERGH,

      PLAINTIFF,

v.                                                                          CASE NO.: CV-06-J-861-NE

WEISER SECURITY SERVICES,
INC.,

      DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 13), evidence (doc. 15) and memorandum in support of said motion (doc. 14), to which the plaintiff filed a response (doc. 17) and exhibits in support of her opposition (doc. 18).  Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

## I.  Factual Background

Plaintiff sues her past employer for sexual harassment, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981a.  Plaintiff worked for defendant as an administrative assistant from August 18, 2003, until she was terminated on April 29, 2005.  Defendant exhibit 3; plaintiff depo. at 79, 104-105.  Her supervisor was David Lebon, the branch manager.  Plaintiff depo. at 31-32; Lebon depo. at 10.

The plaintiff asserts she was sexually harassed while employed by defendant by Thomas Ricks.  Plaintiff depo. at 22; 23.  Ricks is a field supervisor for defendant. Plaintiff depo. at 30; Lebon depo. at 14.

The plaintiff was sent for training in human resource issues by defendant. Plaintiff depo. at 11.  The employee handbook and sexual harassment were reviewed during both training sessions.  *Id*. at 12. Part of her training was so that plaintiff could train new employees.  *Id*. at 14.  The plaintiff estimated that she did orientations for 70 employees during the time she was employed by the defendant.  *Id*. at 112.  When new employees were hired, the plaintiff would review the handbook with them.  *Id*. at 110.

The harassment at issue began in November 2004 when Ricks put his arms around the plaintiff, acted like he was going to kiss her on the cheek and made comments to another employee including "isn't she just the cutest little thing you've ever seen."  Plaintiff depo. at 24-25, 27.  Prior to this time, Ricks had never done anything like this and the plaintiff worked well with him.  *Id*. at 25.  She viewed this as an isolated incident and did not report it.  *Id*. at 29-30, 50.  No other incident occurred until March 2005.  *Id*. at 25, 154.

The plaintiff stated that in March 2005, Ricks "grabbed my butt and my breast."  Plaintiff depo. at 33.  She had had a terrible day at work, and when Ricks

came into the office, she stated "have you ever felt like you weighed 300 pounds and couldn't stand up?" *Id*. at 34.  When she went to stand up, "he grabbed both sides of my butt and shook me and I slammed my chair back and I said what are you doing. He said I was just helping you up and I said I don't need your damn help." *Id*. at 34-35.  When she went to walk out the door, he reached back and touched her left breast. *Id*. at 35, 45.  The plaintiff asked him what he thought he was doing and pushed him away. *Id*. at 35, 45-46.

> He said nothing.  I said don't do that again.  So I smoked my cigarette and went back in.  And he followed me back in and I said what is wrong with you Thomas?  I said you're acting stupid.  I said you just go about your business and let me take care of my business.  So, he went into his office.

*Id*. at 35.  Lebon was in his office at the time, which was twelve to sixteen feet away, but the plaintiff believes he should have been able to hear what was happening at her desk.  *Id*. at 36-37, 41-42, 156.  Lebon stated that he could hear voices from the plaintiff's office if they were raised.  Lebon depo. at 13.  He could sometimes hear plaintiff on the telephone.  *Id*. at 14.

The plaintiff did not report to Lebon that Ricks had grabbed her bottom because she "was too mad."  Plaintiff depo. at 48.  She also did not report that Ricks had touched her breast because she only wanted to talk to her husband.[1]  *Id*.  She

---

[1]The plaintiff's husband also worked for defendant.  Plaintiff depo. at 49.

discussed with her husband whether she should report it to Lebon and they decided to come up with a way to deal with it on their own. *Id*. at 49-50. The plaintiff stated that she did not report either of these incidents to anyone in management because she did not have much faith in them. *Id*. at 50. She also explained that she considered Ricks to be a friend. *Id*. at 153.

Approximately three days after the prior incident, Ricks began making sexual comments to the plaintiff. Plaintiff depo. at 51-54. She told him to go away and leave her alone. *Id*. at 54. Ricks made further comments, to which the plaintiff responded "if you don't get the hell out of here, Thomas, I'm going to punch you right in the snot locker." *Id*. For the next several days, similar comments were again made by Ricks. *Id*. at 55, 59-60. The plaintiff told Ricks if he did not stop, she would call his wife. *Id*. at 56. The plaintiff stated that the comments were constant the entire time Ricks was at the office with her. *Id*. at 155-156. He would sit in her office and suggest they "go have sex" or "get a motel room." *Id*. The plaintiff thought Lebon should have been able to hear the comments Ricks was making, so she did not complain to Lebon. *Id*.

The plaintiff finally told Lebon about Ricks' behavior during the last week of March 2005. Plaintiff depo. at 57-58; Lebon depo. at 18. She told Lebon that there was a problem and related about Ricks grabbing her and touching her. Plaintiff depo.

at 61; Lebon depo. at 19.   The plaintiff did not tell Lebon about the specific

statements Ricks made, but stated "all this crap had to stop because I couldn't handle

it any longer."  Plaintiff depo. at 62.  She told Lebon she was being sexually harassed

by Ricks.  Lebon depo. at 18. Lebon asked the plaintiff if she was making a charge

at that time.  *Id*.  She told him to give her a couple of days to see if she could get

Ricks to stop, but if not he would have to do something.  Plaintiff depo. at 61; Lebon

depo. at 18.  Lebon agreed.  Plaintiff depo. at 61.  Lebon asserts he asked the plaintiff

to write a statement but she said she was not filing an official complaint and would

handle it herself.  Lebon depo. at 20; 42.

       After five or six days, she returned to Lebon and told him it was his turn to do

something about Ricks.[2]  Plaintiff depo. at 61, 63.  Based on that, Lebon spoke to

Ricks without telling him who complained and he denied making any sexual

advances toward anyone.  Lebon depo. at 23.   He did not report the plaintiff's

complaint to anyone and he took no further action.  *Id*. at 20, 25.  The plaintiff did not

complain to the corporate office because she did not think they would do anything.

Plaintiff depo. at 64.  However, when Lebon spoke to Ricks and told Ricks to stay

away from the plaintiff for two weeks, Ricks complied.  *Id*. at 61, 64.

---

[2]Lebon only recalls speaking to the plaintiff one time about Ricks.  Lebon depo. at 23.

After two weeks passed, Ricks was back in the plaintiff's office making comments and Lebon took no further action. Plaintiff depo. at 65, 69. About a week later, Lebon asked the plaintiff how things were going, and she replied "what do you think?" *Id*. at 65. Lebon made no further mention of her complaint. *Id*. He assumed if there was still a problem, the plaintiff would report it to him. Lebon depo. at 22. The plaintiff made no further complaints concerning Ricks' behavior because she did not believe it would do any good. Plaintiff depo. at 66. Instead, she began writing down everything that happened. *Id*.

The plaintiff was terminated April 29, 2005, for giving a "would not rehire" on a reference concerning Denver Hitts, which the plaintiff agrees she did.[3] Plaintiff depo. at 79. The plaintiff was not supposed to give these type references, but had done so before. *Id*. at 80. The plaintiff was accused by defendant of saying things regarding Hitts which she knew to be untrue. *Id*. at 80, 146-149.

The plaintiff knew defendant has a sexual harassment policy and that policy prohibited harassment based on sex or other protected categories. Plaintiff depo. at 114-115. The policy stated that any employee who believed he or she was harassed should immediately report the incident to the branch manager. *Id*. at 115. The policy

---

[3]The plaintiff does not dispute that her termination was proper. The plaintiff does not claim that her termination was in any way related to her complaint regarding sexual harassment.

also stated that if the branch manager did not resolve the problem, the employee

should call the Director of Human Resources or president in the support center and

provided a phone number.  *Id*. at 117.  Plaintiff did not follow these instructions.  *Id*.

at 117-118.  The plaintiff never put her complaints in writing because she thought that

was Lebon's job.  *Id*. at 116.  She did write a letter to Charlene Sutherlin, at the

corporate offices, but stated it was "just venting frustrations" and that she never sent

it.  *Id*. at 164.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence
> of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial.  In such a situation, there can be no
> genuine issue as to any material fact, since a complete failure of proof
> concerning an essential element of the nonmoving party's case
> necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001);

*Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11ᵗʰ Cir.2000). With these

standards in mind, the court considers the plaintiff's claim.

The Eleventh Circuit Court of Appeals has stated:

Title VII prohibits sex-based discrimination that alters the terms and conditions of employment. 42 U.S.C. § 2000e-2(a)(1). The forbidden alteration can be brought about in either of two ways. *Hulsey v. Pride Rests., LLC,* 367 F.3d 1238, 1245 (11ᵗʰ  Cir.2004). One is through a tangible employment action, such as a pay decrease, demotion or termination. *Id.* The other way is through creation of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work. *Id.*

*Baldwin v. Blue Cross/Blue Shield of Alabama,* 2007 WL 805528, *9 (11ᵗʰ Cir.2007).

Because the plaintiff does not complain of any tangible employment action, the court

only considers whether the alleged comments by Ricks created a hostile environment.

To demonstrate sexual harassment,[4] a plaintiff must show: "(1) that she belongs

to a protected group; (2) that she has been subject to unwelcome sexual harassment;

(3) that the harassment was based on her sex; (4) that the harassment was sufficiently

severe or pervasive to alter the terms and conditions of employment; and (5) that

there is a basis for holding the employer liable."  *Pipkins v. City of Temple Terrace,*

*Florida,* 267 F.3d 1197, 1199 (11ᵗʰ Cir.2001).

---

[4]The plaintiff brings claims under Title VII and 42 U.S.C. § 1981a, the latter of which allows the plaintiff to recover compensatory and punitive damages for intentional discrimination, should she prevail on her Title VII claim.  The § 1981a claim is wholly dependent on plaintiff prevailing on her Title VII claim and thus does not require a separate analysis.

The parties do not dispute that the plaintiff belongs to a protected group or that the harassment was both unwelcome and based on her sex. The defendant disputes that the harassment was severe or pervasive enough to alter the terms and conditions of employment. The court agrees that the plaintiff's allegations fall short of the minimum recognized as harassment by the Eleventh Circuit. *See e.g., Gupta v. Florida Board of Regents*, 212 F.3d 571, 585 (11th Cir. 2000). The plaintiff alleges one incident of a hug, followed four months later by one incident where her coworker grabbed her bottom and touched her breast. The plaintiff never reported the first incident, and only mentioned the second incident after Ricks began making offensive comments, of which plaintiff also complains.

The plaintiff reported the comments and the second touching incident to her supervisor the last week in March 2005, but told him she would handle the situation herself and that she did not want to make an official report. By the plaintiff's testimony, she returned to her supervisor five or six days later, which would have been the first week in April 2005. Her supervisor spoke to Ricks, and Ricks left the plaintiff alone for the next two weeks. The plaintiff asserts that the harassment thereafter resumed, but by her testimony, this had to have been the last week of April, when she was terminated. She never reported to her supervisor that the harassment had resumed, and she never followed the instructions in the employee handbook to

report the offending behavior.   At most, the plaintiff complains of offensive

comments made over the course of approximately six weeks, about which she never

informed management and specifically told her supervisor she did not want to

officially pursue a complaint.

Although the plaintiff argues this case is similar to the facts in *Hulsey v. Pride*

*Restaurants, LLC*, 367 F.3d 1238 (11th Cir.2004), the court disagrees.  In *Hulsey*, the

Eleventh Circuit found that the plaintiff's supervisor's conduct "was severe,

involving many direct as well as indirect propositions for sex. It included following

her into the restroom, and repeated attempts to touch her breasts, place his hands

down her pants, and pull off her pants.  It included enlisting the assistance of others

to hold her while he attempted to grope her." *Id*., at 1248. The plaintiff's complaints

here simply do not rise to this level.[5]

The prohibition of harassment on the basis of sex forbids only behavior so

objectively offensive as to alter the "conditions" of the victim's employment. *Oncale*

*v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1002-03, 140

L.Ed.2d 201 (1998).  The conduct in question must be severe or pervasive enough so

that a reasonable person would find it hostile or abusive.  *Clover v. Total System*

---

[5]Similarly, the facts here are not comparable to those of *Johnson v. Booker T. Washington*, 234 F.3d 501 (11th Cir.2000), another case on which the plaintiff relies.  Like *Hulsey*, the facts in *Johnson* included numerous instances of unwanted touching, in addition to the unwanted comments.

*Services, Inc*. 176 F.3d 1346, 1351 (11ᵗʰ Cir.1999). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). To assess the objective hostility of the conduct, the court must look at four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1285 n. 12 (11ᵗʰ Cir.2003)*, citing Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1246 (11ᵗʰ Cir.1999).

Accordingly, a plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive. *See Mendoza,* 195 F.3d at 1246; *Faragher,* 524 U.S. at 788, 118 S.Ct. at 2284. The evidence presented to this court, suggestive comments over the course of several weeks, preceded by two isolated incidents of touching, simply does not rise to the level that a reasonable person would find it to be "severe or pervasive" harassment, regardless of how the plaintiff perceived it. *See Gupta,* 212 F.3d at 583, 586 ("A finding that [plaintiff's] complaints constitute sexual harassment would lower the bar of Title VII to punish mere bothersome and uncomfortable conduct, and would trivialize true instances of sexual harassment" (citation omitted)).

12

Even assuming that the plaintiff could demonstrate that Ricks' comments were severe or pervasive harassment, she has established no basis for holding the defendant liable.

> Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action. *See Breda v. Wolf Camera & Video,* 222 F.3d 886, 889 (11th Cir.2000). Thus, a victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer. *See id.*

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir.2002).[6]

An employer can avoid liability if: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities [it] provided." *Faragher,* 524 U.S. at 807, 118 S.Ct. at, 2293; *Ellerth v. Burlington Industries, Inc.,* 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). Because it is an affirmative defense, the employer bears the burden of establishing both of these elements. *See Frederick v. Sprint/United Mgmt. Co.,* 246 F.3d 1305, 1313 (11th  Cir.2001).

---

[6]The plaintiff chastises the defendant for stating the standard as "severe or pervasive" and then "severe and pervasive."  The court notes that the Eleventh Circuit also states the standard in question with both of these conjunctions, as quoted in *Miller, supra*, leading this court to believe that the distinction between "severe" and/or "pervasive" is not as significant as the plaintiff asserts.

13

The court finds the defendant has met both of its burdens. The plaintiff admits that the employee handbook prohibited sexual harassment and provided employees with specific avenues to address any such problems. Additionally, the plaintiff admits she never made any written complaint, and when Lebon took no action, she did not call the phone number provided in the handbook to report the offending conduct to management. Although the plaintiff complains that Lebon took no further action, the "requirement of a reasonable investigation does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser. Nothing in the *Faragher-Ellerth* defense puts a thumb on either side of the scale in a he-said, she-said situation." *Baldwin v. Blue Cross/Blue Shield of Alabama,* 2007 WL 805528, *13 (11th Cir.2007).

The plaintiff has offered no evidence that Lebon telling Ricks to stay away from the plaintiff for two weeks was unreasonable. The Eleventh Circuit has stated that warnings and counseling of the harasser are enough where the allegations are substantiated. *See Fleming v. Boeing Co.,* 120 F.3d 242, 246-47 (11th Cir.1997). Thus, even assuming the plaintiff's allegations were substantiated, the plaintiff never told Lebon that his first conversation with Ricks did not resolve the problem. Rather, she just asserts that Lebon should have known the harassment continued because she assumed he could overhear Ricks in her office. However, the plaintiff's assumption

that her supervisor should have been able to overhear sexual comments made to her by Ricks is not sufficient to satisfy plaintiff's duty to report the harassment. The plaintiff's failure to comply with the reporting rules and procedures her employer has established bars any recovery from defendant for Ricks' comments. *See Frederick,* 246 F.3d at 1314 (citing *Madray,* 208 F.3d at 1302; *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1365 (11th Cir.1999). See also *Baldwin v. Blue Cross/Blue Shield of Alabama,* 2007 WL 805528, *16 (11th Cir.2007).[7]

## CONCLUSION

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to

---

[7]In *Baldwin*, the Eleventh Circuit stated:

....And, more importantly, Baldwin had a prompt reporting duty under the prophylactic rules the Supreme Court built into Title VII in the *Faragher* and *Ellerth* decisions. The rules of those decisions place obligations and duties not only on the employer but also on the employee. One of the primary obligations that the employee has under those rules is to take full advantage of the employer's preventative measures. The genius of the *Faragher- Ellerth* plan is that the corresponding duties it places on employers and employees are designed to stop sexual harassment before it reaches the severe or pervasive stage that amounts to discrimination that violates Title VII. *See Ellerth,* 524 U.S. at 764, 118 S.Ct. at 2270 (limiting employer liability where the employee fails to comply with reporting requirements "encourage[s] employees to report harassing conduct before it becomes severe or pervasive" and serves Title VII's deterrent purpose). But that design works only if employees report harassment promptly, earlier instead of later, and the sooner the better.

*Baldwin v. Blue Cross/Blue Shield of Alabama*, 2007 WL 805528, *16 (11th Cir.2007).

trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**.   The claims are **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

DONE and **ORDERED** this the 28th day of March, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE